**Johnny Silva JIMENEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00187–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 29, 1999.

Wayne Heller, Houston, for Appellant.

John B. Holmes, Alan Curry, Houston, for Appellee.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

Appellant Johnny Silva Jimenez was indicted for attempted capital murder. The case was tried to a jury, which found appellant guilty of aggravated assault and assessed punishment at confinement for 15 years and a fine of $1,500. We affirm.

## BACKGROUND

The complainant, A.Y., came to the United States from Mexico when she was approximately 13 years old to live with her sister, who was married to appellant, Johnny Silva Jiminez. She assisted in caring for the Jimenez's two small children. Appellant forced her to have sex with him, and she had ·her first child by him when she was 15 or 16 years old. That child was placed for adoption. A.Y. had four other children by appellant. During this time, she continued to live in the house with her sister, appellant, and their children. After the fourth child was born, A.Y., with her four children, moved to another house; appellant moved with her.

Appellant began to suspect that A.Y. was seeing another man. On the evening of September 11, 1995, A.Y. came home from work to find appellant in their bed-room and a shotgun on the dresser. He said he had proof that she was going out with someone else. He had the shotgun in his hand, pointed it at her, hit her in the face with the barrel of the gun, and slapped and shoved her. He said he was going to have sex with her and then kill her. During this time, he kept the gun pointed at her. She pushed the gun away with her right hand, which was in front of the barrel, and he fired the gun. Her right hand was blown off and her left hand was seriously damaged by the shot. Their daughter, Joanna, who was in the back yard, heard some of the argument and called the police.

At appellant's trial for attempted murder, A.Y. testified that appellant had abused her for 15 years and that she was afraid of him. She also testified that on July 22, 1995, she filed charges on appellant for assault after he struck her in the face with his fist. She further testified that two weeks before the September shooting, he threatened her with the same shotgun.

Before trial, the State filed notice of its intention to use evidence of extraneous offenses, specifically the July 22, 1995 assault, the first threat with the shotgun, and the sexual assault of A.Y. when she was a minor. During the guilt/innocence phase of the trial, the State introduced evidence of these extraneous offenses through the testimony of A.Y., one of her co-workers, and police officers. The court's charge at the guilt/innocence phase included an instruction that the jury could not consider evidence of any extraneous offenses unless it found beyond a reasonable doubt that the defendant committed the offenses. The charge also included a definition of "reasonable doubt."

No evidence of extraneous offenses was introduced at the punishment phase of the trial. The court's charge at the punishment phase did not contain an instruction on the State's burden of proof of extraneous offenses. The charge included the following instruction:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

This part of the charge tracks the language required by article 37.07, section 4(a) of the Texas Code of Criminal Procedure. Appellant did not object to the charge or request any additional instructions or definitions.

## DISCUSSION

### Jury Charge on Reasonable Doubt

In his first issue, appellant complains that the trial court erred in not instructing the jury, at the punishment phase of the trial, on "reasonable doubt" as a standard of proof of extraneous offenses.

■ At the punishment phase of a trial, if evidence of extraneous offenses is presented, the jury should be instructed not to consider the extraneous offenses unless the State has proved them beyond a reasonable doubt, if such an instruction is requested by the defendant. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App. 1996); *Escovedo v. State*, 902 S.W.2d 109, 114 (Tex.App.—Houston [1st Dist.] 1995) *pet. ref'd*, 934 S.W.2d 145 (1996).

■ In this case, appellant did not request an instruction on reasonable doubt. Moreover, the State did not introduce any evidence of extraneous offenses at the punishment phase of the trial. The instruction was properly included in the charge at the guilt/innocence phase where evidence of extraneous offenses was admitted.

We hold that the trial court did not err in not including an instruction on reasonable doubt as a standard of proof of extraneous offenses at the punishment phase of the trial. We overrule appellant's first issue.

### Jury Charge on Good Time

In his second issue, appellant contends that the trial court erred in instructing the jury in the charge at the punishment phase that appellant's time in prison might be reduced through the award of good conduct time because he was not eligible for such a reduction while serving a prison sentence for aggravated assault.

In his third issue, appellant contends that the parole charge mandated by article 37.07, section 4(a), of the Texas Code of Criminal Procedure is unconstitutional be-

cause the statute requires trial courts to provide erroneous information to juries regarding the effect of good conduct time on sentences involving crimes listed under article 42.18, section 8(c) of the Texas Code of Criminal Procedure.[1] Appellant argues that the requirement to give a misleading charge violates the due course of law and due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 13, 19, and 29 of the Texas Constitution. He also argues that the required charge violates the separation of powers provision of article II, section 1, of the Texas Constitution because it allows the legislature to usurp the rightful role of the judiciary in deciding relevant questions of law.

■ We first consider whether the statutory requirement to give such a charge violates the separation of powers provisions of the Texas Constitution.

Appellant relies on *Armadillo Bail Bonds v. State*, 802 S.W.2d 237 (Tex.Crim. App.1990). *Armadillo Bail Bonds* involved a statutory determination that a final judgment declaring bail bond forfeiture could not be entered until 18 months after the date the forfeiture was entered. *Id.* at 238, 241. The court of criminal appeals held that the statute was unconstitutional because it interfered with the courts' power to enter a final judgment. *Id.* at 239–40. *Armadillo Bail Bonds* is not applicable to the present case. The Texas Constitution specifically grants to the legislature the authority to "enact parole laws and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense." TEX. CONST. art. IV, § 11(a).

We hold that article 37.07, section 4(a), of the Texas Code of Criminal Procedure does not violate the separation of powers provision of the Texas Constitution.

We next consider appellant's due course of law and due process argument.

In a challenge to the parole instruction, the Texas Court of Criminal Appeals has determined that the article 37.07, section 4(a) parole instruction does not violate the due course of law provisions in Article I, Sections 13 and 19 of the Texas Constitution. *Oakley v. State*, 830 S.W.2d 107, 111–12 (Tex.Crim.App.1992). The court of criminal appeals has also held that the article 37.07 parole instruction does not violate federal due process. *Muhammad v. State*, 830 S.W.2d 953, 956 (Tex.Crim. App.1992). However, the court of criminal appeals has never specifically ruled on the issue of the constitutionality of the article 37.07 charge relating to good-conduct time where the defendant is not eligible for good-conduct time.

The article 37.07 charge on good-conduct time is not incorrect in every instance. It is only incorrect for those offenses enumerated in section 508.149 of the Texas Government Code that preclude the accumulation of good-conduct time to qualify a convict for early release under mandatory supervision. Thus, the charge mandated in article 37.07 is, for offenses other than those enumerated in section 508.149, a correct statement of the law. We therefore address the charge only as applied in this case in which the information given to the jury regarding good-conduct time was incorrect.

In *Green v. State*, the Waco Court of Appeals dealt with the issue of whether the charge mandated by article 37.07 was misleading to the jury because good-conduct time could not be credited to the appellant. 839 S.W.2d 935, 946 (Tex. App.—Waco 1992, pet. ref'd). The Waco court assumed that the instruction regarding good time constituted error and determined, in an *Almanza* fundamental error harm analysis, that the instruction did not prevent the appellant from receiving a fair and impartial trial. *Id.*

1. Now codified at TEX. GOV'T CODE ANN. 508.149 (Vernon 1998).

■ We believe the Waco Court of Appeals was correct in assuming the charge is erroneous when given in a case where the accumulation of good-conduct time cannot result in early release. We hold that the court's charge to the jury on good-conduct time as mandated in article 37.07, section 4(a), is unconstitutional as applied to this appellant because it violates the due course of law provisions of article I, sections 13 and 19 of the Texas Constitution and the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution in requiring an instruction that is, in this case, an incorrect statement of the law. We further hold that the charge on the accumulation of good-conduct time, as given in this case, was error.

■ The purpose of the jury charge is to inform the jury of the applicable law and to guide it in applying the law to the case. *Hutch v. State*, 922 S.W.2d 166 (Tex. Crim.App.1996). The charge should not merely avoid misleading or confusing the jury, but should lead them and prevent confusion. *Id.* at 169.

■ Article 36.14 of the Texas Code of Criminal Procedure contains the overriding principle governing the court's charge to the jury. It requires a judge to deliver to a jury, in writing, a charge "distinctly setting forth the law applicable to the case." TEX.CODE CRIM. P. ANN. art. 36.14 (Vernon Supp.1999). When faced with a conflicting statutory requirement that is, as applied to a particular defendant, unconstitutional, the trial court must follow the mandate of article 36.14, tailoring the charge so that it becomes a correct statement of the law as it applies to the particular defendant.[2]

■ Our finding of error, however, does not end our inquiry. We must determine, under article 36.19 of the Texas Code of Criminal Procedure, whether the error resulted in such harm that it requires reversal of the conviction. Because appellant did not object to the court's charge to the jury, it is appellant's burden on appeal to show the erroneous charge resulted in such egregious harm that he did not receive a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

■ Under the instruction as mandated by article 37.07 and given by the court in this case, the jury was instructed not to consider the extent to which good-conduct time or the parole law might affect this defendant. Appellant has pointed to no evidence that the jury violated the court's instruction. In addition, good-conduct time was not mentioned in closing arguments.

> If the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

2. When presented with an objection by the defendant that the article 37.07 instruction misstated the law, one trial court gave the following supplemental instruction:

> Under the law applicable to this case if the defendant is sentenced to a term of imprisonment she can only be released on parole or when the sentence is served in its entirety. She will not be entitled to good time credit.

*Hyde v. State*, 970 S.W.2d 81, 89 (Tex.App.—Austin 1998, pet. ref'd).

However, we suggest an instruction that removes all references to good-conduct time as follows:

> Under the law applicable in this case, it is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Appellant's actions resulted in A.Y.'s loss of one hand and severe injury to the other. The State introduced evidence of the impact of these injuries on the life of A.Y. and her children. In closing arguments, the State urged the jury to assess the maximum punishment of 20 years because of the heinous nature of appellant's actions. In spite of the State's plea for maximum punishment, the jury assessed punishment of 15 years.

Considering the record as a whole, the entire charge, the nature of the offense, and the punishment assessed, we hold that appellant has not shown the erroneous charge resulted in such egregious harm that he did not receive a fair and impartial trial.

Accordingly, we overrule appellant's second and third issues.

We affirm the judgment.